**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WHISKEY FLATS INC.,** | : | **CIVIL ACTION** |
| *Plaintiff,* | : | |
| | : | |
| **v.** | : | **No. 20-3451** |
| | : | |
| **AXIS INSURANCE COMPANY,** | : | |
| *Defendant.* | : | |

## <u>MEMORANDUM</u>

The Plaintiff in this case is a restaurant and bar that has been forced to close and modify its operations due to the COVID-19 pandemic and consequent Shutdown Orders. Plaintiff suffered business income losses and sought indemnity from its insurance provider, Axis Insurance Company ("Axis" or "Defendant") under its all-risk commercial property policy. Axis denied Plaintiff's claim. Plaintiff then filed suit against Axis seeking a declaratory judgment that its losses are indeed covered. ECF No. 1. This matter is currently before the Court on Axis's Motion For Judgment on the Pleadings. ECF No. 15. Having considered Axis's motion and the Plaintiff's response (ECF No. 17), the Court will grant Defendant's motion because Plaintiff's claims are not covered by the terms of its policy.

## I.   BACKGROUND[1]

### A.  The Parties and Policy

---

[1] The Court accepts the allegations in the Complaint as true and draws all reasonable factual inferences in favor of the Plaintiff. *Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991). In deciding a motion for judgment on the pleadings, this Court considers the pleadings and attached exhibits, undisputedly authentic documents attached to the motion where Plaintiff's claims are based on those documents, and matters of public record. *Atiyeh v. Nat'l Fire Ins. Co. of Hartford*, 742 F. Supp. 2d 591, 595 (E.D. Pa. 2010).

Whiskey Flats Inc. t/a Out of Wack Jack's Bar & Grill ("Plaintiff" or "Whiskey Flats") is a restaurant and bar located in Philadelphia, Pennsylvania. ECF No. 1 ¶ 9. Defendant is an insurance carrier based in Chicago, Illinois. ECF No. 1 ¶ 10. Whiskey Flats purchased commercial property insurance coverage (the "Policy") from Defendant for a policy period from April 2019 to April 2020. ECF No. 1 ¶ 11; ECF No. 1 Ex. A; ECF No. 11-1. Among other things, the Policy includes a Business Income Coverage Form that provides Whiskey Flats coverage in the event of certain interruptions to its business. Relevant here, that Form includes both Business Income coverage and Civil Authority coverage.

The Policy states that it covers any Business Income loss that Whiskey Flats sustains "due to the necessary suspension of your 'operations' during the 'period of restoration,'" if the suspension was "caused by direct physical loss of or damage to property at [the insured's] premises." ECF No. 11-1 at 108. The Policy defines the period of restoration as the "period of time after direct physical loss or damage" and "when the premises should be repaired, rebuilt, or replaced with reasonable speed and similar quality." *Id*. at 116. Business Income includes "net income ... plus continuing normal operating expenses incurred, including payroll." *Id.* at 108.

The Civil Authority provision covers loss of Business Income and extra expenses incurred due to damage to property other the insured's premises, when as a result of "dangerous physical conditions," a civil authority's actions prohibit access to both the insured's premises and the area immediately surrounding the damaged property. *Id*. at 109. The damaged property must be within one mile of the insured's premises.

The Policy excludes coverage for any "loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." *Id*. at 63 (the "Virus Exclusion"). The Virus Exclusion applies to "all coverage under all forms and endorsements," including Business Income and Civil Authority coverage. *Id*.

**B.  The Shutdown Orders**

On March 6, 2020, Pennsylvania Governor Tom Wolf issued a Proclamation of Disaster Emergency, the first formal recognition of the emergent situation in the Commonwealth as a result of COVID-19. ECF No. 1, Ex. 2. On March 19, 2020, Governor Wolf issued an Order requiring all non-life sustaining businesses in the Commonwealth to cease or modify operations. ECF No. 1, Ex. 3. Businesses that were permitted to remain open were required to follow "social distancing practices and other mitigation measures defined by the Centers for Disease Control." *Id*. On March 23, 2020, Governor Wolf issued a Stay-at-Home Order for residents of Philadelphia, Allegheny, Bucks, Chester, Delaware, Monroe, and Montgomery Counties. ECF No. 1, Ex. 4. On that same day, the Pennsylvania Department of Health issued a similar Order, noting that "operation of non-life-sustaining businesses present the opportunity for unnecessary gatherings, personal contact and interaction that will increase the risk of transmission and the risk of community spread of COVID–19." ECF No. 1, Ex. 5. On April 1, 2020, Governor Wolf extended the March 23, 2020 Stay-at-Home Order to the entire Commonwealth of Pennsylvania. ECF No. 1, Ex. 6. Subsequent orders designed to mitigate the spread of the COVID-19 virus followed.

As a result of these Orders, Plaintiff had to suspend and modify its operations. ECF No. 1 ¶ 67. Plaintiff submitted a claim for a business loss pursuant to its policy, seeking coverage under the policy. *Id.* at ¶ 13. Defendant rejected Plaintiff's business loss and business interruption claims and other claims, contending, *inter alia*, that Plaintiff did not suffer physical damage to its property directly and stating other reasons why Plaintiff was not entitled to coverage for the losses and damages claimed. *Id.*

### C. Procedural History

On July 14, 2020 Plaintiff initiated this action seeking a declaration that it is entitled to insurance coverage under the Policy for claimed business income losses caused by the COVID-19 global pandemic and resulting Shutdown Orders issued by the Governor of Pennsylvania. ECF No. 1. Defendant filed its Answer with Affirmative Defenses on October 29, 2020. ECF No. 9. On December 11, 2020, the Defendant filed the instant Motion for Judgment on the Pleadings, which is now before the Court for resolution. ECF Nos. 15 and 17.

## II.   LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A court may grant a Rule 12(c) motion "if, on the basis of the pleadings, the movant is entitled to judgment as a matter of law." *Fed Cetera, LLC v. Nat'l Credit Servs., Inc.*, 938 F.3d 466, 470 n.7 (3d Cir. 2019) (quotation omitted). A Rule 12(c) motion is analyzed under the same standards that apply to a Rule 12(b)(6) motion, construing all allegations and inferences in the light most favorable to the nonmoving party. *Wolfington v. Reconstructive Orthopaedic*

4

*Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019). To survive a 12(c) motion, the complaint must contain sufficient factual matter to show that the claim is facially plausible, enabling the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (quoting *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009)).

## III.  DISCUSSION

Interpretation of an insurance policy, and specifically whether a particular loss triggers coverage, is a question of law. *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co*., 908 A.2d 888, 897 (Pa. 2006). The court will read the policy as a whole and construe its meaning according to its plain language. *Spector v. Fireman's Fund Ins. Co*., 451 F. App'x 130, 136 (3d Cir. 2011). When the policy language is "clear and unambiguous," the Court must "give effect to that language." *401 Fourth Street v. Inv'rs Ins. Co*., 879 A.2d 166, 170 (Pa. 2005). When policy language is ambiguous, the Court is to construe the provision against the insurer and in favor of the insured. *Ramara, Inc. v. Westfield Ins. Co*., 814 F.3d 660, 677 (3d Cir. 2016). Policy language is ambiguous where it is reasonably susceptible to more than one construction. *Madison Const. Co. v. Harleysville Mut. Ins. Co*., 735 A.2d 100, 106 (1999). The language may not be stretched beyond its plain language meaning to create an ambiguity. *Meyer v. CUNA Mut. Ins. Soc*., 648 F.3d 154, 164 (3d Cir. 2011). Mere disagreement between the parties does not render the policy language ambiguous. *Id*.

### A.  Coverage

As the insured, Plaintiff has the initial burden of establishing coverage under the

Policy. *State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 111 (3d Cir.

2009). Where the insured meets that burden and the insurer relies on a policy exclusion as

the basis for denying coverage, the insurer then has the burden of proving that the

exclusion applies. *Id*.[2]

### 1.  Business Income Coverage

Under the Policy, Plaintiff can obtain Business Income coverage if it must suspend

its operations during a period of restoration as a result of "direct physical loss of or

damage to" its premises. ECF No. 11-1 at 108. No one disputes that Plaintiff suspended

its operations as a result of the Shutdown Orders. The only question is whether physical

loss or damage caused that suspension.

Importantly, the Policy only pays Business Income coverage during a period of

restoration. The Policy measures that period from the start of the physical loss until the

"date when the property at the described premises should be repaired, rebuilt or replaced

with reasonable speed and similar quality" or when "business is resumed at a new

permanent location." *Id*. at 116. In addition, the Policy includes special exclusions for the

Business Income coverage that apply to an "increase of loss caused by or resulting from

---

[2] This Court has recently considered similar claims under this framework.  *See Pennsylvania ATCM Optical, Inc. v. Twin City Fire Ins. Co.,* No. CV 20-4238, 2021 WL 131282 (E.D. Pa. Jan. 14, 2021); *Clear Hearing Sols., LLC v. Cont'l Cas. Co.*, No. CV 20-3454, 2021 WL 131283 (E.D. Pa. Jan. 14, 2021); *Indep. Rest. Grp. v. Certain Underwriters at Lloyd's, London*, No. CV 20-2365, 2021 WL 131339 (E.D. Pa. Jan. 14, 2021); *TAQ Willow Grove, LLC v. Twin City Fire Ins*., No. CV 20-3863, 2021 WL 131555 (E.D. Pa. Jan. 14, 2021); *Ultimate Hearing Sols. II, LLC v. Twin City Fire Ins. Co*., No. CV 20-2401, 2021 WL 131556 (E.D. Pa. Jan. 14, 2021); *Zagafen Bala, LLC v. Twin City Fire Ins. Co.*, No. CV 20-3033, 2021 WL 131657 (E.D. Pa. Jan. 14, 2021); and *Moody v. Hartford Fin. Grp., Inc.*, No. CV 20-2856, 2021 WL 135897 (E.D. Pa. Jan. 14, 2021).

[a d]elay in resulting, repairing, or replacing the property due to interference at the location by strikers or other persons." *Id*. at 68. These provisions make clear that there must be some sort of physical damage to the property that can be the subject of a repair, rebuilding, or replacement. The COVID-19 pandemic does not fall within that definition. The parties' agreement to provide Business Income coverage only during a period of restoration and to measure that period of restoration against the time it takes to repair the premises indicates that they intended the Policy to cover losses for physical damage, and that intent controls the Court's interpretation of the Policy.

Whiskey Flats argues that there is no scientific proof that the coronavirus has not caused physical damage to Plaintiff's property. However, scientific proof is not necessary. It is apparent to the Court that the Plaintiff's income losses were caused by the Shutdown Orders and modifications to its operations due to the risk of transmission of the virus at its premises, not some speculative, unprovable physical damage or unknown condition of the property. Further, the factual issues the Plaintiff cites to avoid judgment at this stage—the expenses for remediation, the health risks of COVID-19— would not change the Court's conclusion.  Plaintiff's claim here is for Business Income coverage, the costs associated with decontaminating the property or altering it to allow for social distancing do not bear on whether the cause of the losses is covered. Further, Plaintiff was required to comply with the Shutdown Orders regardless of the presence or absence of the coronavirus on its property, so what any *post hoc* discovery could reveal would not change the cause of the Plaintiff's income losses. Even if there was coronavirus present at the property, to find that contamination that can be cured with simply disinfecting

7

surfaces satisfies the "physical loss or damage" requirement would strain the words beyond "their natural, plain, and ordinary sense" meaning, *Madison Const. Co.*, 735 A.2d at 108, and be contrary to the standards established in this Circuit for damage caused by sources unnoticeable to the naked eye. *Port Auth. of N.Y. & N.J. v. Affiliated MF Ins. Co.*, 311 F.3d 226, 235 (3d Cir. 2002). While the Court agrees that "loss of" the premises can mean the loss of use, that loss of use must be tied to a physical condition actually impacting the property, which is not satisfied here. Plaintiff did not lose use because the premises suffered physical damage; nor was the loss of use caused by actual contamination of the property. Business Income coverage therefore does not apply.

## 2.  Civil Authority Coverage

The Policy's Civil Authority coverage applies only if there is "damage to property other than property at the described premises" and if a civil authority prohibits access to the area immediately around the covered premises in response to dangerous physical conditions in the area. ECF No. 11-1 at 109. But Whiskey Flats did not close because of damage to a nearby property or because there was some dangerous physical condition at another nearby property. It closed because the Shutdown Orders applied to its own operations. Thus, its shutdown and resulting losses fall outside the scope of the Civil Authority coverage.

### B.  The Virus Exclusion

The Virus Exclusion applies to "loss or damage caused by or resulting from any virus … that induces or is capable of inducing physical distress, illness or disease." ECF No. 11-1 at 63. The language is not ambiguous, and it applies to COVID-19, which is

8

caused by a coronavirus that causes physical illness and distress. *See Brian Handel D.M.D., P.C. v. Allstate Ins. Co*., Civ. No. 20- 3198, 2020 WL 6545893, at *4 (E.D. Pa. Nov. 6, 2020) (similar virus exclusion barred coverage). Plaintiff claims that the Virus Exclusion does not apply to the Civil Authority coverage because that coverage "rests upon a different component of the Policy" (ECF No. 17 at 26). However, the Virus Exclusion clearly states that it "applies to all coverage under all forms and endorsements [ ], including … forms or endorsements that cover business income, extra expense or action of civil authority." ECF No. 11-1 at 63. Even if Plaintiff's claimed losses fell within the grant of coverage under the Business Income or Civil Authority provisions, the Virus Exclusion would still prevent recovery.

## IV.    Conclusion

Because the Policy does not cover Plaintiff's losses, the Court will grant Defendant's Motion for Judgment on the Pleadings. An appropriate Order will follow.